## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FIDELITY AND DEPOSIT CO.** | * | |
| **OF MARYLAND** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 17-964** |
| | * | |
| **AUDUBON COMMISSION** | * | **SECTION L (1)** |

## <u>ORDER AND REASONS</u>

Before the Court is Defendant's motion to stay proceedings pending completion of contractual dispute resolution proceedings. R. Doc. 11. Plaintiff opposes the motion. R. Doc. 19. Having considered the parties' arguments, submissions, and applicable law, the Court now issues this Order and Reasons.

## I.    BACKGROUND

This case arises from a contract dispute between Plaintiff Fidelity and Deposit Company of Maryland ("Fidelity") and Defendant Audubon Commission ("Audubon"), concerning a Takeover Agreement for a construction project effective November 12, 2014. R. Doc. 1 at 5. Plaintiff invokes jurisdiction of this case under 28 U.S.C. § 1332. R. Doc. 1 at 1.

Audubon entered into a contract with Courseault Commercial, Inc. ("Courseault"), who is not a party in the instant case, in which Courseault agreed to provide materials and labor for a project at One Canal Street in New Orleans, Louisiana. R. Doc. 1 at 2. The contract is an industry standard AIA Construction Contract containing AIA Conditions of the Contract for Construction. R. Doc. 11-1 at 1.

Plaintiff Fidelity executed a bond for Courseault as a surety in connection with this contract. R. Doc. 1 at 2. The contract contains a liquidated damages clause that would allow for damages if the project was not completed by January 28, 2014. R. Doc. 1 at 2. After Audubon

1

declared Courseault to be in default of the contract, on November 12, 2014, Fidelity agreed to take over the contract between Courseault and Audubon. ("Takeover Agreement"). R. Doc. 1 at 2.

The Takeover Agreement states that liquidated damages for which Fidelity would be liable would be reduced by 33-percent if the project was completed by January 10, 2014 or by 20-percent if the project was completed between January 11, 2015 and January 21, 2015. R. Doc. 1 at 2. The project was completed on April 17, 2015. R. Doc. 1 at 3.

Plaintiff argues that Fidelity and/or Courseault validly requested time extensions due to incidents that were either caused by Audubon or were excusable due to the redesign of the exhaustion vents, grating system and event cover, railing modifications, shutdowns for Mardi Gras and French Quarter Fest, and modifications to the pumps. R. Doc. 1 at 3. Plaintiff asserts that if these requests had been granted, Courseault would have had at least 98 more days to complete the project, which would entitle Fidelity to a 33-percent reduction in liquidated damages pursuant to the Takeover Agreement. R. Doc. 1 at 3-4. Plaintiff further alleges that although all work under the contract has been completed and final payment has been sent, Audubon has improperly withheld at least $208,108.00 from Fidelity. R. Doc. 1 at 4-5. Accordingly, Fidelity filed the instant litigation on February 3, 2017, seeking funds it believes have been improperly withheld. *See* R. Doc. 1.

II.    **PRESENT MOTION**

Defendant Audubon answered the suit on June 23, 2017, alleging that Fidelity failed to follow contractual dispute resolution procedures that were agreed to by both parties and were part of the contract. *See* R. Doc. 8. Audubon now asks the Court to stay this case pending the outcome of the dispute resolution proceedings provided in the contract. R. Doc. 11.

## III. LEGAL STANDARD

District courts have the inherent power "to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). It is well established that the power to stay proceedings has been recognized as such inherent power. *Id.* The decision of whether a stay should be granted is based on the "judicial economy and convenience for the Court, for counsel, and for the parties." *United States v. FEDCON Joint Venture*, No. 16-13022, 2017 WL 897852, at *1 (E.D. La. 2017). The decision is made based on an exercise of judgment, which involves balancing competing interests. *Id.* (quoting *In re Beebe*, 56 F.3d 1384 (5th Cir. 1995)). The Court has recently noted that the use of a contract dispute resolution proceeding will serve judicial economy, as it has the potential to resolve all or part of the suit, therefore making further proceedings limited or unnecessary. *Id.*, at *2.

## IV. DISCUSSION

In its motion to stay, Audubon argues that Fidelity has failed to follow numerous contractual obligations for dispute resolution prior to filing the instant lawsuit. *See* R. Doc. 11. Specifically, Defendant refers to A201-2007 General Conditions of the Contract for Construction. R. Doc. 11. Article 15 of these conditions, which is incorporated as part of the construction contract, refers to the procedural process that is triggered when a disputed claim for payment or other relief is made. *See* R. Doc. 11-1 at 3; R. Doc. 11-4 at 37 (Contract § 15.1.1).

The contract provides for a three-step process for dispute resolution when a party seeks "payment of money." First, a new claim for payment is sent to the Initial Decision Maker, who is the designated architect on the project. *See* R. Doc. 11-4 at 38 (Contract § 15.2.1); R. Doc. 11-3 at 5 (Contract § 6.1). Second, the architect's "initial decision shall be final and binding on the parties, but subject to mediation . . . ." R. Doc. 11-4 at 38 (Contract § 15.2.5). Mediation is

mandatory, with the contract making clear that "mediation is a condition precedent" to further binding dispute resolution. *Id.* at 39 (Contract § 15.3.1). Finally, if the claim is still unresolved, the claim is then sent to binding dispute resolution. *See id.*

Defendant argues that because Fidelity never initiated a claim with the Initial Decision Maker, it did not follow the requisite dispute resolution proceedings as set forth in the contract. *See* R. Doc. 11-1. In contrast, Fidelity argues that it did satisfy the dispute resolution proceedings requirement set forth in the contract. *See* R. Doc. 19 at 1. Specifically, Fidelity refers to a mediation demand letter that it sent to Audubon on February 3, 2017, the same day this lawsuit was initiated. *Id.* Fidelity thus maintains that it commenced mediation and complied with the contractual requirements. *See* R. Doc. 19.

Based on the language of the General Conditions of the Contract for Construction, the Court finds Defendant's argument more persuasive. Article 15.1.2 identifies a particular process for making claims of payment: In order to make a claim, the claimant must first submit the claim to the Initial Decision Maker. *See* R. Doc. 11-4 at 37 (Contract §15.1.2). If the claim remains unresolved after being reviewed by the Initial Decision Maker, the parties are then subject to mediation. *See id.* at Contract § 15.2.5. The relevant terms of the contract dealing with claims are unambiguous, and neither party denies that the contract governs here. Fidelity fails to discuss why it did not begin the process, as set forth in the contract, of first sending its claim to the Initial Decision Maker. Instead, it alleges that sending Audubon a mediation demand satisfies its contractual requirements. However, it does not. The language of the contract clearly provides that a claim for payment must begin with the Initial Decision Maker. Obtaining this initial decision is a condition precedent to mediation. Accordingly, the Court finds that Fidelity failed to comply with the dispute resolution process spelled out in the contract.

4

Fidelity further argues that granting the Defendant's motion to stay would impede judicial economy. Fidelity cites *David v. Signal Intern., Inc.*, where the Court declined to grant a stay, noting that the hardship and inconvenience would outweigh any benefit. 37 F. Supp. 3d 836, 840 (E.D. La. 2014). In that case, however, the Court's reasoning rested on the fact that there was a pending petition for mandamus relief, noting that the petition was unlikely to be granted. *See id*. Here, there is no indication that non-judicial dispute resolution would be fruitless. Furthermore, this Court has noted that "[i]n terms of judicial economy, the use of a contract dispute resolution procedure may resolve all or part of the dispute, making further proceedings limited or unnecessary." *FEDCON Joint Venture*, 2017 WL 897852, at *2. Although a stay will temporarily delay the proceedings, such a delay is foreseeable based on the language of the contract and is not prejudicial. Furthermore, if the dispute resolution procedure does not resolve Fidelity's claims, these claims will not be barred or waived. Accordingly, the Court concludes that the instant proceeding shall be stayed pending completion of contractual dispute resolution proceedings.

V.     **CONCLUSION**

Based on the foregoing reasons, accordingly,

**IT IS ORDERED** that Defendant's motion to stay (R. Doc. 11) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **STAYED,** and administratively closed, pending the completion of the contractual dispute resolution procedures.


New Orleans, Louisiana, this 7th day of February, 2018.


**ELDON E. FALLON**
United States District Judge